**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**August 15, 2017**

# In the Court of Appeals of Georgia

A17A0754. WILSON et al. v. MOORE.

RICKMAN, Judge.

Holly and Jack Wilson appeal a trial court's order granting the petition of Benjamin Moore to legitimate the minor child, M. S. W. and denying Mr. Wilson's petition for adoption of M. S. W. The Wilsons contend, inter alia, that the trial court erred by concluding that Mr. Wilson was not the legal father of M. S. W. and failing to consider the effect of Mr. Wilson's administrative legitimation of M. S. W. on Moore's legitimation petition. For the following reasons, we vacate the judgment of the trial court and remand for proceedings consistent with this opinion.

The trial court made the following findings of fact:

This case involves the minor biological child of [Moore] and defendant [Ms. Wilson]: [M. S. W.], born September 12, 2011. The

minor child is now [five] years old and resides with [Ms. Wilson]. This case has a very unusual and convoluted factual situation.

The facts in the case are basically undisputed. [Moore] and [Ms. Wilson] had a short term relationship that included one sexual encounter on December 25, 2010. After the morning of December 26, 2010, [Moore] and [Ms. Wilson] did not see each other again until September 17, 2015, which was the date that depositions were taken in this case. The evidence shows that [Moore] and [Ms. Wilson] had a brief telephone conversation in late December, 2010, which was followed by a brief email exchange in mid-January, 2011. Following those contacts, the parties did not have any contact with each other until a telephone conversation between the parties regarding this subject action that took place in April, 2015. This was the first time that the parties had any contact or discussion concerning the minor child.

The evidence shows that in late December, 2010, [Ms. Wilson] resumed her relationship with the intervenor, [Mr. Wilson]. [Ms. Wilson] discovered that she was pregnant sometime in late January, 2011. The minor child was born in September 2011, and [Ms. Wilson] and [Mr. Wilson] were married on February 29, 2012. The evidence shows that [Ms. Wilson] and [Mr. Wilson] were not married when the child was conceived or when the child was born.

The evidence shows that sometime during the year [2013], [Moore] received information that [Ms. Wilson] had a child.[1] Additionally, he received some information that there was the possibility that the minor child could be his biological daughter. Later in 2014, [Moore] contacted legal counsel as to his possible rights and a course of action regarding the minor child. Sometime late in 2014, [Moore] decided that he wanted to determine if he was the biological father of the child and requested his counsel to contact [Ms. Wilson]. [Moore] had previously received information that a DNA test by [Ms. Wilson] showed [Mr. Wilson] to be the biological father.

The evidence shows that on February 19, 2015, [Moore's] attorney sent a letter to [Ms. Wilson] requesting a DNA test to determine if [Moore] might be the father of the minor child. This letter was followed up by a phone conversation from [Moore] to [Ms. Wilson] in April of 2015. The evidence shows that [Moore] filed [the] Petition for DNA Genetic Paternity Testing and Legitimation on June 19, 2015. [Ms. Wilson] filed an answer on July 1, 2015. On July 1, 2015 [Mr. Wilson] filed a Motion to Intervene and to Dismiss the Petition of DNA Paternity Testing. As a part of this motion, he also filed a Petition for Legitimation.

---

[1] The trial court's final order erroneously states that Moore did not receive this information until 2014. To the extent that it may be relevant on remand, particularly with respect to any necessary reconsideration of whether Moore abandoned his opportunity interest, we note that it is undisputed that Moore found out Ms. Wilson had a child in 2013.

On July 9, 2015, [] consent order[s] [were] entered between the parties allowing for [Mr. Wilson] to intervene in the case and also ordering DNA testing. The evidence shows that the DNA test showed that [Moore] was the biological father of the minor child, [M. S. W.].

On October 28, 2015, [Mr. Wilson] filed an amendment to his answer and responsive pleadings adding a Counterclaim for Adoption of the minor child.

Following a hearing, the trial court determined that Moore had not abandoned his opportunity interest to have a relationship with M. S. W. The trial court further found that there was no evidence that Moore would be an unfit parent and granted Moore's request for legitimation of M. S. W. The trial court stated that the ruling was in the best interests of M. S. W. The trial court also concluded that "[Mr. Wilson] is not the biological father of [M. S. W.], nor is he the legal father of the minor child by virtue of marriage, legitimation, or adoption."

The Wilsons contend, inter alia, that the trial court erred by concluding that Mr. Wilson was not the legal father of M. S. W. and failing to consider the effect of Mr. Wilson's administrative legitimation of M. S. W. on Moore's legitimation petition. We agree.

4

"'Legal father' means a male who . . . [h]as legitimated a child pursuant to [OCGA § 19-7-21.1]." OCGA § 19-7-21.1 (a) (2) (F) (2011).

> Prior to the child's first birthday, a father of a child born out of wedlock may render his relationship with the child legitimate when both the mother and father have freely agreed, consented, and signed a voluntary acknowledgment of paternity and an acknowledgment of legitimation which have been made and have not been rescinded pursuant to Code Section 19-7-46.1. The State Office of Vital Records shall provide notice, in writing, of the alternatives to, legal consequences of, and the rights and responsibilities of signing a voluntary acknowledgment of legitimation.

OCGA § 19-7-21.1 (b) (2011).[2]

On the day of M. S. W.'s birth, Mr. Wilson was present and was named as the child's father on the birth certificate. The following day, Mr. Wilson signed a voluntary acknowledgment of paternity and he and Ms. Wilson signed an acknowledgment of legitimation pursuant to OCGA § 19-7-21.1 (2011). The acknowledgment of legitimation form included a statement that the relationship

---

[2] OCGA § 19-7-21.1 was repealed in its entirety in 2016. See Ga. L. 2016, p. 304 § 2. However, its repeal "shall not be construed to affect a voluntary acknowledgment of legitimation that was valid under the former provisions of [OCGA § 19-7-21.1], nor any of the rights or responsibilities flowing therefrom, if it was executed on or before June 30, 2016." Ga. L. 2016, p. 312 § 18.

between Mr. Wilson and M. S. W. "shall be considered legitimate for all purposes under law pursuant to OCGA § 19-7-21.1." When M. S. W. was approximately five months old, the Wilsons were married and they have lived together, as a family, since M. S. W.'s birth. "Thus, [Moore's] petition sought to delegitimize a legitimate child and to break up a legally recognized family unit already in existence." *Davis v. LaBrec*, 274 Ga. 5, 7 (549 SE2d 76) (2001).

However, the trial court apparently failed to consider the legal effect of Mr. Wilson's administrative legitimation of M. S. W.. Accordingly, we must vacate the trial court's final order legitimating Moore as the legal father of M. S. W. On remand, as a threshold matter, the trial court must consider any preclusive effect of the preexisting administrative legitimation by Mr. Wilson on Moore's legitimation petition. See *Davis*, 274 Ga. at 7; see also *Labrec v. Davis*, 243 Ga. App. 307, 316 (2) (534 SE2d 84) (2000) (should the trial court conclude that it can properly address the biological father's legitimation petition, on remand, "we direct the court to determine the crucial issue of whether the delegitimation of the child's lifelong relationship with [the legal father] is in the best interest of the child, considering the emotional harm such decision would have upon the child in light of [the child's] established familial

6

bonds and emotional ties with [the legal father]"). See generally, *Baker v. Lankford*, 306 Ga. App. 327, 329-331 (1), (2) (702 SE2d 666) (2010).

*Judgment vacated and case remanded. Ellington, P. J., and Andrews, J., concur.*